IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA,
    *Plaintiff*,

    v.                            Civil Action No. ELH-13-269

DAVON TAYLOR,
    *Defendant*

**MEMORANDUM**

Davon Taylor, the self-represented defendant, filed correspondence that the Court has construed as a motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), requesting relief from his sentence due to COVID-19.  ECF 296 (the "Motion").  He also submitted an exhibit.  ECF 296-1.  The government filed an opposition on June 15, 2020 (ECF 300), along with an exhibit.  ECF 300-1.  Correspondence was received from the defendant, with exhibits, on June 23, 2020.  *See* ECF 301.[1]

A hearing is not necessary to resolve the Motion.  For the reasons that follow, I shall deny the Motion.

## I.      Background

On May 29, 2013, a grand jury sitting in the District of Maryland returned an indictment against Taylor, charging conspiracy to distribute heroin, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  ECF 15.  The grand jury returned a Superseding Indictment on September 11, 2013,  charging conspiracy to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 846.  ECF 24.  And, on December 11, 2013, the grand jury returned a Second Superseding

---

[1] Among other things, Taylor alleges in ECF 301 that he received ineffective assistance of counsel, and he disputes the drug quantity at issue.

Indictment (ECF 49), charging Taylor and six others in Count One with conspiracy to distribute one kilogram or more of heroin, in violation of 21 U.S.C. § 846.  In Count Two, Taylor and a codefendant were charged with distribution of heroin on October 29, 2012.  *Id.*

Taylor entered a plea of guilty on January 6, 2015 (ECF 176), pursuant to a Plea Agreement.  ECF 135.  In particular, Taylor pleaded guilty to the lesser included charge in Count One of the Superseding Indictment, which charged "conspiracy to distribute and possess with intent to distribute heroin, in violation of 21 U.S.C. § 846."  ECF 135, ¶ 1.  The plea was tendered to Judge William D. Quarles, Jr.[2]

The Plea Agreement included a factual stipulation.  *Id.* at 4.  According to the stipulation, from July 2012 through November 2012, Taylor conspired with co-conspirators "to obtain and distribute quantities of heroin in and around the Park Heights and Belvedere neighborhood of Baltimore, Maryland."  *Id.*  Taylor and his co-conspirators "operated a street level drug distribution shop in that area, dispensing street-level and wholesale quantities of heroin to customers, some of whom travelled from Pennsylvania. . . to acquire the heroin."  *Id.*

In September 2012, Drug Enforcement Administration ("DEA") agents conducted a wiretap of Taylor's coconspirator.  *Id.*  As a result of intercepted conversations, DEA agents concluded that Taylor was working as a "street hitter."  *Id.*  A customer from Pennsylvania travelled to Baltimore to purchase heroin and contacted Taylor's coconspirators, who then directed Taylor to "serve the [Pennsylvania] customer the requested quantity of heroin."  *Id.*

According to the Presentence Report ("PSR", ECF 152), the defendant had a final offense level of 29.  *Id.* ¶¶ 21, 24.  And, he had 10 criminal history points, which established a Criminal History Category of V.  *Id.* ¶ 36.  However, because Taylor was deemed a Career Offender, his

---

[2] The case was reassigned to me on February 21, 2019, due to the retirement of Judge Quarles.

Criminal History Category was increased to VI.  *Id.* ¶ 37.  Taylor's advisory guidelines called for

a sentence ranging from 151 to 188 months of incarceration.  *Id.* ¶ 51.  Judge Quarles sentenced

Taylor to a below-guidelines term of 130 months in the custody of the Bureau of Prisons

("BOP").  ECF 180 at 2.

Taylor is now incarcerated at FCI Forrest City Medium in Arkansas.  ECF 296-1.  He is

29 years of age.  *See id.*  He has a projected release date of February 5, 2023.  ECF 296-1.

Taylor has provided no information as to any health conditions that make him

particularly vulnerable to COVID-19.  Nor has he indicated in the Motion that he sought relief

from the Warden before filing the Motion.  But, he complains, correctly, that there are "a high

number of [COVID-19] cases due to the virus spredding [sic] throughout the Facility . . . ."  *Id.*

## II.  Discussion

### A.  Statutory Background

Ordinarily, a court "may not modify a term of imprisonment once it has been imposed."

18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United*

*States v. Jackson,* 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395

(4th Cir. 2019).  But, "the rule of finality is subject to a few narrow exceptions."  *Freeman v.*

*United States*, 564 U.S. 522, 526 (2011).  One such exception is when the modification is

"expressly permitted by statute."  18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Commonly termed the "compassionate release" provision, 18 U.S.C. § 3582(c)(1)(A)(i)

provides a statutory vehicle to modify a defendant's sentence.  Section 3582 was adopted as part

of the Sentencing Reform Act of 1984.  It originally permitted a court to alter a sentence only

upon a motion by the Director of the BOP.  *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030

(1984).  Thus, a defendant seeking compassionate release had to rely on the BOP Director for

relief. *See*, *e.g.*, *Orlansky v. FCI Miami Warden*, 754 F. App'x 862, 866-67 (11th Cir. 2018); *Jarvis v. Stansberry*, No. 2:08CV230, 2008 WL 5337908, at *1 (E.D. Va. Dec. 18, 2008) (denying  motion for compassionate release because § 3582 "vests absolute discretion" in the BOP).

However, for many years the safety valve of § 3582 languished.  The BOP rarely filed motions on an inmate's behalf.  As a result, compassionate release was exceedingly rare.  *See Hearing on Compassionate Release and the Conditions of Supervision Before the U.S. Sentencing Comm'n* 66 (2016) (statement of Michael E. Horowitz, Inspector General, Dep't of Justice) (observing that, on average, only 24 inmates were granted compassionate release per year between 1984 and 2013).

In December 2018, Congress significantly amended the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA").  *See* Pub. L. 115-391, 132 Stat. 5239 (2018).  As amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a defendant's term of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first.  So, once a defendant has exhausted his administrative remedies, he may petition a court directly for compassionate release.

Section 3582(c) is titled "Modification of an imposed term of imprisonment."  Under § 3582(c)(1)(A), the court, upon motion of the Director of BOP or the defendant, upon exhaustion of administrative rights,  may modify the defendant's sentence if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," it finds that

(i) extraordinary and compelling reasons warrant such a reduction;

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

Accordingly, in order to be entitled to relief under 18 U.S.C. § 3582(c)(1)(A)(i), a defendant must demonstrate that (1) "extraordinary and compelling reasons" warrant a reduction of the sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the Sentencing Commission in U.S.S.G. § 1B1.13.

U.S.S.G. § 1B1.13 is titled "Reduction in Term of Imprisonment under 18 U.S.C. § 3582(c)(1)(A) Policy Statement." The text mirrors the statute. Application Note 1 of U.S.S.G. § 1B1.13 defines "Extraordinary and Compelling Reasons" in part as follows (emphasis added):

1. Extraordinary and Compelling Reasons.—Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below:[3]

(A)   Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (*i.e.*, a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (*i.e.*, a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

---

[3] Subsection (2) of U.S.S.G. § 1B1.13 establishes as a relevant factor that "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2).

(I) **suffering from a serious physical or medical condition**,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that **substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility** and from which he or she is not expected to recover.

Other extraordinary and compelling reasons include the age of the defendant (Application Note 1(B)) and Family Circumstances (Application Note 1(C)). Application Note 1(D) permits the court to reduce a sentence where, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 App. Note 1(D).

The BOP regulation appears at Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 2582 and 4205. The Guideline policy statement in U.S.S.G. § 1B1.13, along with the application notes, and BOP Program Statement 5050.50 define "extraordinary and compelling reasons" for compassionate release based on circumstances involving illness, declining health, age, exceptional family circumstances, as well as "other reasons."

The defendant, as the movant, bears the burden of establishing that he is entitled to a sentence reduction under 18 U.S.C. § 3582. *See*, *e.g.*, *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013); *United States v. Edwards*, NKM-17-00003, 2020 WL 1650406, at *3 (W.D. Va. Apr. 2, 2020). And, compassionate release is a rare remedy. *United States v. Chambliss*, 948 F.3d 691, 693-94 (5th Cir. 2020); *United States v. Mangarella*, FDW-06-151,

2020 WL 1291835, at *2-3 (W.D. N.C. Mar. 16, 2020); *White v. United States*, 378 F. Supp. 3d 784, 787 (W.D. Mo. 2019).

## B.  COVID-19

Defendant filed his Motion while the nation is "in the grip of a public health crisis more severe than any seen for a hundred years." *Antietam Battlefield KOA v. Hogan*, CCB-20-1130, ___ F. Supp. 3d ___, 2020 WL 2556496, at *1 (D. Md. May 20, 2020).  That crisis is COVID-19.[4]  The World Health Organization declared COVID-19 a global pandemic on March 11, 2020. *See Seth v. McDonough*, PX-20-1028, 2020 WL 2571168, at *1 (D. Md. May 21, 2020).

To be sure, the judges of this Court "have written extensively about the pandemic." *United States v. Williams*, PWG-19-134, 2020 WL 3073320, at *1 (D. Md. June 10, 2020) (collecting cases).  Therefore, it is not necessary to recount in detail the "unprecedented nature and impact" of the pandemic.  *Id.*

But, I must emphasize that the virus is highly contagious.  *See Coronavirus Disease 2019 (COVID-19), How COVID-19 Spreads*, CTRS. FOR DISEASE CONTROL & PREVENTION (Apr. 2, 2020),  https://bit.ly/2XoiDDh.   Although  many  people  who  are  stricken  with  the  virus experience only mild or moderate symptoms, the virus can cause severe medical problems as well as death, especially for those in "high-risk categories…."  *Antietam Battlefield KOA*, 2020 WL 2556496, at *1 (citation omitted).   And, there is currently no vaccine, cure, "or proven effective treatment" that is available.  *Id.* (citation omitted).

As of June 17, 2020, COVID-19 has infected over 2.1 million Americans and caused over 117,000 deaths in this country.  *See COVID-19 Dashboard*, THE JOHNS HOPKINS UNIV.,

---

[4] Severe Acute Respiratory Syndrome Coronavirus 2 (SARS-CoV-2) is the cause of coronavirus disease 2019, commonly called COVID-19.  *Antietam Battlefield*, 2020 WL at 2556496, at *1 n.1 (citation omitted).

https://bit.ly/2WD4XU9 (last accessed June 17, 2020).  Moreover, according to the Centers for

Disease Control and Prevention  ("CDC"), certain risk factors increase the chance of severe

illness.  The risk factors include age (over 65); lung disease; asthma; chronic kidney disease;

serious heart disease; obesity; diabetes; liver disease; and a compromised immune system.  *See*

*Coronavirus Disease 2019 (COVID-19), People Who Are At Risk for Severe Illness*, CTRS. FOR

DISEASE CONTROL & PREVENTION (May 14, 2020), https://bit.ly/2WBcB16.

The pandemic "has produced unparalleled and exceptional circumstances affecting every

aspect of life as we have known it."  *Cameron v. Bouchard*, LVP-20-10949, 2020 WL 2569868,

at *1 (E.D. Mich. May 21, 2020), stayed, ___ Fed. App'x ___, 2020 WL 3100187 (6th Cir. June

11, 2020).  For a significant period of time, life as we have known it came to a halt.  Although

most businesses have reopened, many are subject to substantial restrictions.

Thus far, the only way to slow the spread of the virus is to practice "social distancing."

*See Coronavirus Disease 2019 (COVID-19), How to Protect Yourself & Others*, CTRS. FOR

DISEASE CONTROL & PREVENTION, https://bit.ly/3dPA8Ba (last accessed May 21, 2020).  Social

distancing is particularly difficult in the penal setting, however.  *Seth*, 2020 WL 2571168, at *2.

Prisoners have little ability to isolate themselves from the threat posed by the coronavirus.  *Id.*,

*see also Cameron*, 2020 WL 2569868, at *1.  They are not readily able to secure products to

protect themselves, such as masks and hand sanitizers.  Consequently, correctional facilities are

especially vulnerable to viral outbreaks and ill-suited to stem their spread.  *See Coreas v.*

*Bounds*, TDC-20-0780, 2020 WL 1663133, at *2 (D. Md. Apr. 3, 2020) ("Prisons, jails, and

detention centers are especially vulnerable to outbreaks of COVID-19."); *see also*  Letter of

3/25/20 to Governor Hogan from approximately 15 members of Johns Hopkins faculty at the

Bloomberg School of Public Health, School of Nursing, and School of Medicine (explaining that

the "close quarters of jails and prisons, the inability to employ effective social distancing measures, and the many high-contact surfaces within facilities, make transmission of COVID-19 more likely");[5] *accord Brown v. Plata*, 563 U.S. 493 519-20 (2011) (referencing a medical expert's description of the overcrowded California prison system as "'breeding grounds for disease'") (citation omitted).

On March 23, 2020, the CDC issued guidance for the operation of penal institutions to help prevent the spread of the virus. *Seth*, 2020 WL 2571168, at *2. Moreover, the BOP has implemented substantial measures to protect prisoners from COVID-19 and to treat those who are infected. *See* ECF 334 at 6-7 (detailing "preventive and mitigation measures" that BOP has implemented to combat COVID-19). Indeed, as the Third Circuit recognized in *United States v. Raia*, 954 F.3d 594, 597 (3rd Cir. 2020), the BOP has made "extensive and professional efforts to curtail the virus's spread."

Attorney General William Barr issued a memorandum to Michael Carvajal, Director of the BOP, on March 26, 2020, instructing him to prioritize the use of home confinement for inmates at risk of complications from COVID-19. *Hallinan v. Scarantino*, 20-HC-2088-FL, 2020 WL 3105094, at *8 (E.D. N.C. June 11, 2020). Then, on March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act"), Pub. L. No. 116-136, 134 Stat. 281. In relevant part, the CARES Act authorized the Director of BOP to extend the permissible length of home confinement, subject to a finding of an emergency by the Attorney General. *See* Pub. L. No. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General issued another memorandum to Carvajal, finding "the requisite emergency . . . ."

---

[5] The Court may take judicial notice of matters of public record. *See* Fed. R. Evid. 201.

*Hallinan*, 2020 WL 3105094, at *9.  Notably, the April 3 memorandum "had the effect of expanding the [BOP's] authority to grant home confinement to any inmate . . . ." *Id.*

Nevertheless, as with the country as a whole, the virus persists in penal institutions.[6]  As of June 17, 2020, the BOP reported that 1,209 inmates and 168 BOP staff tested positive for COVID-19, and 85 inmates and one staff member have died from the virus.  *See* https://www.bop.gov/coronavirus/ (last accessed June 17, 2020).  With respect to FCI Forrest City Medium, which has 1,090 inmates (ECF 300 at 8), there were no inmates with the virus as of the time of the government's submission on June 15, 2020, but four staff members have the illness.  https://www.bop.gov/coronavirus.  Fortunately, no inmates have died there.  *Id.*  The adjacent FCI Forrest City Low currently has 147 inmates who are positive for COVID-19, but there are no staff members with the illness.  Previously, there were 463 cases.  ECF 300 at 8.  Again, no inmates died there.  *Id.*

### C.  Analysis

Taylor does not expressly reference 18 U.S.C. § 3582(c)(1)(A)(i), but he identifies the COVID-19 pandemic as justification for his request for relief.  ECF 296 at 1.  The government counters, *inter alia*, that Taylor is ineligible for compassionate release because he has not exhausted his administrative remedies.  ECF 300 at 2.  Further, the government argues that Taylor has presented "no 'extraordinary and compelling' reason justifying his release."  *Id.*  And,

---

[6] The *New York Times* has reported that cases of COVID-19 "have soared in recent weeks" at jails and prisons across the country.  Timothy Williams et al., Coronavirus cases Rise Sharply in Prisons Even as They Plateau Nationwide," N.Y. Times (June 18, 2020), https://nyti.ms/37JZgH2.

the government asserts that consideration of the factors under 18 U.S.C. § 3553(a) does not warrant a sentence reduction.  *Id.*[7]

Of import here, the Motion is silent as to any attempt by defendant to exhaust his remedies before seeking relief from this Court.  Although the Fourth Circuit has not addressed the issue, judges in this district have generally found that 18 U.S.C. § 3582 is not subject to equitable waiver.  *United States v. Maycock*, GLR-14-0133, 2020 WL 2395620, at *2 (D. Md. May 12, 2020); *United States v. Osagbue*, PX 19-448, 2020 WL 1939713, at *1 (D. Md. Apr. 22, 2020); *United States v. Underwood*, TDC-18-0201, 2020 WL 1820092, at *2-3 (D. Md. Apr. 10, 2020); *United States v. Johnson*, ___ F. Supp. 3d ___, 2020 WL 1663360, at *5-6 (D. Md. Apr. 3, 2020).  And, those courts that have waived the exhaustion requirement have done so only where it is clear that petitioning the BOP would be an exercise in futility.  *See, e.g.*, *United States v. Barringer*, PJM 13-0129, 2020 WL 2557035, at *2-3 (D. Md. May 19, 2020) (waiving exhaustion requirement because defendant was designated to one prison but had not yet been transferred and remained in the custody of the U.S. Marshal Service).

Taylor has not demonstrated that he petitioned the BOP for release and 30 days have elapsed.  Therefore, the Motion is premature.

Moreover, even if Taylor exhausted his administrative remedies, he fails to identify any extraordinary and compelling reason to justify his release.  He is not seriously ill, over 65 years of age, and does not claim to have any of the CDC risk factors for COVID-19, which would establish eligibility for compassionate release.  Fear of contracting the novel coronavirus while incarcerated is not sufficient reason for granting compassionate release.  "Simply put, the

---

[7] In addition, the government points out that "the Office of the Federal Public Defender reviewed [Taylor's] claim and will not be entering their appearance on his behalf."  *Id.* at 1 n.1.

coronavirus is not tantamount to a 'get out of jail free' card." *United States v. Williams*, PWG-13-544, 2020 WL 1434130, at *3 (D. Md. March 24, 2020).

And, even if the Court determined that the defendant met one of the conditions establishing an extraordinary or compelling reason justifying release, the Court's analysis of the factors under 18 U.S.C. § 3553(a) leads the Court to conclude that release is not warranted.

## II.      Conclusion

For the reasons stated above, I shall deny the Motion (ECF 296), without prejudice.  An Order follows, consistent with this Memorandum.


Date:   June 23, 2020                                      _____/s/_____
                                                           Ellen Lipton Hollander
                                                           United States District Judge